```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JUAN RAMIREZ,                              :
                                           :
                                           :    03 Civ. 8718 (HB)(HBP)
               Petitioner,                 :
                                           :    OPINION & ORDER
       -against-                           :
                                           :
WILLIAM J. PHILLIPS,                       :
Superintendent of Green Haven              :
Correctional Facility,                     :
                                           :
               Respondent.                 :
------------------------------------------------------X
```

**Hon. Harold Baer, Jr., District Judge*:**

Juan Ramirez ("Petitioner") petitions this Court, pursuant to 28 U.S.C. § 2254(d)(1) and (d)(2) (2007), for a writ of *habeas corpus* vacating his conviction of criminal possession of a controlled substance in the first degree. Petitioner claims that: (1) the trial court erred in denying his suppression motion without a hearing; (2) the trial court's behavior during jury selection improperly intimidated potential and actual jurors from disclosing any biases they may have had and thus denied him his right to a fair trial; (3) appellate counsel was ineffective because he failed to argue Petitioner's claim regarding the trial court's alleged intimidation of jurors, and (4) the trial court improperly refused to accept his guilty plea. Based on this petition, Magistrate Judge Henry B. Pitman issued a Report and Recommendation ("Report") on December 20, 2006, recommending that the Petition be denied in all respects. The Court received timely objections from Petitioner to the Report. Respondent submitted a Reply. After careful review of all the submissions in this case, the petition for a writ of *habeas corpus* pursuant to § 2254(d) is DENIED.

## I. BACKGROUND[1]

**A.    Evidence Presented at Trial**

On the evening of December 15, 1998, two plain-clothed New York City police officers sat in an unmarked police car double-parked on Edgecombe Avenue in Manhattan. Tr. 312, 379-381. While in the car, the officers observed Petitioner walking south on Edgecombe Avenue in a "drug-prone" area. Tr. 309-311. According to one of the officers, Petitioner appeared to be clutching

---

* Christine Rose, a spring 2007 intern in my Chambers, and currently a rising third-year law student at Brooklyn Law School, provided substantial assistance in the research and drafting of this Opinion.

[1] Judge Pitman's Report and Recommendation provides an extensive factual overview of this action. I incorporate his factual background by reference.

1

something under his coat. Tr. 315, 340, 355, 358, 383-84, 394. When that officer exited the police car, Petitioner looked at him, "abruptly turned around [,] and headed in the other direction." Tr. 311-15, 346, 349-51, 355, 357, 367, 371, 385-86, 392. Petitioner walked "fast," "picked up his pace," and appeared to continue clutching something under his coat. Tr. 314-315.

The officer followed Petitioner. When he was approximately ten feet behind Petitioner, the officer observed Petitioner remove a plastic bag from his jacket and throw it on the ground. Tr. 316-17. Upon closer inspection, the officer observed a package wrapped in cellophane and duct tape which came from the bag Petitioner had discarded. Tr. 316-18, 358-63, 369, 372. No other items similar in shape or appearance were lying near the package. Tr. 334-35. Petitioner was then arrested and the package was recovered. Tr. 318-19, 334, 369, 382-87, 391, 419, 422. It was later determined that the package contained one pound, nine and one-half ounces of cocaine. Tr. 417-19, 422-24.

### B. Procedural History[2]
#### 1. Trial Court's Behavior During Jury Selection

During voir dire the trial judge asked potential jurors various questions regarding their ability to remain fair and unbiased during trial. Among the questions asked were whether jurors had themselves been victims of crimes, and more directly, whether they could be fair in the proceeding. Two potential jurors responded to these questions with rather vague statements, to which the trial judge commented at one point, "I don't believe a word you're saying. I believe you're lying under oath and I believe it's shameful that you're trying to avoid jury duty." Tr. 236-39. After dismissing these potential jurors, the trial court proceeded with jury selection. Twelve jurors were seated and three alternates were selected. Declaration of Assistant Attorney General Danielle L. Attias, dated December 13, 2004 ("Attias Decl."), Ex. A at 8. The alternate jurors did not deliberate. Id.

#### 2. Petitioner's Motion to Suppress

On February 2, 1999, Petitioner moved *in limine* to suppress the recovered cocaine, pursuant to N.Y. CRIM. PROC. § 710.60. Attias Decl., Ex. 8. In the alternative, Petitioner requested a *Mapp/Dunaway* hearing.[3] Id. Petitioner argued that "the seizure of the alleged cocaine represent[ed] the fruit of the police officer's unlawful pursuit of the defendant" and, therefore,

---

[2] The procedural history provided here regarding Petitioner's aborted guilty plea, and the trial court's behavior during voir dire will be brief. The Court has reviewed the relevant transcript excerpts about these two incidents. However, because the Court reviews Magistrate Judge Pitman's findings regarding these claims for clear error pursuant to 28 U.S.C. § 636(b)(1)(C), I need not discuss the underlying facts at great length in this opinion.

[3] To date, neither party has submitted Petitioner's actual suppression motion nor the prosecution's response. However, portions of these motions are included in the prosecution's opposition to the petition and appended materials.

2

violated his Fourth Amendment rights. Id. at 4. The pursuit was unlawful, according to Petitioner, because his "alleged innocuous acts prior to the police pursuit did not justify [] police intrusion into his privacy." Id. at 3-4. Petitioner denied "acting nervously, furtively, evasively or otherwise suspiciously – such as by gesturing toward or adjusting his waistband – before police pursued him" and alleged that "the police did not possess any other corroborative evidence to support their suspicions of the [Petitioner] . . . ." Id.

The prosecution argued that Petitioner lacked standing to pursue a motion to suppress because Ramirez did not provide a sufficient legal basis for suppression pursuant to Criminal Procedure Law §710.60(3). Specifically, according to the prosecution, Ramirez had no reasonable expectation of privacy in the bag or its contents (and thus, lacked standing to bring a Fourth Amendment challenge) because he did not affirmatively claim possession of the objects. See Attias Decl., Ex. B at 7 ("[Ramirez] never claim[ed] that he tossed a bag to the ground, or that, if he did, that the bag and its contents belonged to him, or that he had a possessory interest in it."). Standing to challenge a search is not established by asserting a possessory interest in the goods seized. The defendant must also assert a privacy interest in the place or item searched. People v. Ramirez-Portoreal, 88 N.Y.2d 99, 108 (1996). Thus, according to the prosecution, Petitioner could not assert standing based on the prosecution's allegations alone: "[t]he language of the felony complaint, that the officer recovered drugs 'from the ground where he observed defendant drop it'. . .[is] ambiguous. It was up to the defendant to elaborate on that circumstance in his moving papers if he felt it would establish his standing." Attias Decl., Ex. B at 7. On March 1, 1999, the trial court agreed with the prosecution, and summarily denied Petitioner's motion for suppression without a hearing on the grounds that Petitioner failed to set forth sufficient allegations to establish standing. Attias Decl., Ex. A at 5.

Thereafter, Petitioner was assigned new counsel[4] and moved for reconsideration[5] to suppress the recovered cocaine. See Attias Decl., Ex. B at 7. Petitioner repeated his earlier argument that, at the time of his arrest, he "was not engaged in any apparent criminal activity" and that "[n]othing in his words, actions or demeanor could be characterized [sic] as suspicious." Id. at 8. Petitioner also opined that:

> We question such finding [of cocaine] and we further deny both the allegedly [sic] sighting and dropping of the 'brick' by Mr. Ramirez.

---

[4] Petitioner was assigned new counsel on March 9, 1999.
[5] The record is unclear with respect to the procedural history of this motion. For purposes of this Opinion, the Court assumes defense counsel moved for reconsideration of the earlier motion to suppress physical evidence.

3

Id. (citation omitted). In response, the prosecution asserted that since Mr. Ramirez now alleged that he had never possessed the cocaine, he had no reasonable expectation of privacy and thus, lacked standing to assert a Fourth Amendment violation. Report at 5 (citation omitted). On April 6, 1999, in an oral decision, the trial court agreed with the prosecution and denied Petitioner's motion to suppress for failure to establish standing. Attias Decl., Ex. B at 8-9.

Petitioner raised this motion to suppress again at trial in the midst of cross-examination of one of the police officers who arrested him, urging the court to either reconsider the motion or have the motion reheard by the judge who initially denied the motion.[6] The trial court declined to review the previous denials of Petitioner's suppression motion without a hearing, acknowledging that it had no authority to do so. Tr. 342-345. It further stated that based on the record thus far, "[n]othing [had] been said that even slightly indicate[d] any error on the part of [Justice] Beeler." Tr. 344.

### 3. Petitioner's Aborted Guilty Plea

In the middle of jury selection,[7] Petitioner's counsel informed the trial court that Petitioner had agreed with prosecution to plead guilty to one count of criminal possession of a controlled substance in the second degree in violation of N.Y. CRIM. PROC. § 220.18(1). Tr. 102-3. In exchange, Petitioner would be sentenced to an indeterminate term of ten years to life. The trial court advised Petitioner of his rights and Petitioner agreed to allocute. Tr. 104. As the allocution began, Petitioner asked the trial court whether the ten-year sentence would be determinate and also run concurrently with a two- to four-year sentence imposed on Petitioner for another offense. Tr. 104-5. The trial court informed him that the sentence was indeterminate and would not run concurrently. Id. Petitioner then agreed to continue with the allocution. Id.

There were several other starts and stops in Petitioner's allocution. At one point, Petitioner claimed that he was "psychologically" forced to plead guilty by "everyone" present at the allocution, then immediately retracted his claim and affirmed his voluntary decision to plead guilty. Tr. 109. There were other instances throughout the allocution where it seemed Petitioner did not wish to plead guilty but affirmed his desire to proceed with the allocution. Tr. 110-113. Later, Petitioner was unclear as to whether he possessed the cocaine that was seized after his arrest. Tr. 112-126. He first claimed that when the police arrested him, he did not possess any cocaine. Tr. 118. When the trial court proceeded to ask Petitioner how the drugs came to be found fifteen feet

---
[6] Justice Beeler denied the initial motion to suppress as well as the motion to reconsider. He presided over all pretrial motions and preliminary issues. Justice Leibovitz presided over Petitioner's trial. Attias Decl., Ex. A, at 1.
[7] Outside of the jury's presence.

4

away from him, Petitioner responded at length that he was simply walking past the police officers when they stopped him, searched the ground with a flashlight and found the drugs. Tr. 120. The trial court asked Petitioner to clarify whether he knew who put the drugs on the ground, to which Petitioner responded, "No. No," and the following dialogue occurred:

| | |
|---|---|
| THE COURT: | So, you never saw [the drugs] before the police told you about is that right? |
| MR. RAMIREZ: | Because around that area sometimes I find gold, money, stuff on the floor. |
| THE COURT: | Sir, listen to me. When the police picked up the drugs, did they show the drugs to you? |
| MR. RAMIREZ: | No. No. |
| THE COURT: | You saw them pick up the drugs? |
| MR. RAMIREZ: | No. |
| THE COURT: | Did you put the drugs there? |
| MR. RAMIREZ: | No. |
| THE COURT: | Do you know who put the drugs there? |
| MR. RAMIREZ: | I'm guilty of that. |
| THE COURT: | Sir, do you know who put the drugs on the sidewalk? |
| MR. RAMIREZ: | I don't know who did it. |
| THE COURT: | So, it was not you? |
| MR. RAMIREZ: | Yes, because I'm pleading guilty. |

*************************************************************************

| | |
|---|---|
| THE COURT: | Mr. Ramirez, are you saying you do not know where those drugs came from? |
| MR. RAMIREZ: | Really, I don't know where they came from. But I'm guilty. I'm pleading guilty. |

Eventually, Petitioner stated that he did have possession of the drugs but did not know where he obtained them. Tr. 125-6. The trial court then rejected the guilty plea as being a "plea of convenience" since Petitioner was "denying his guilt," and proceeded with jury selection. Tr. 126.

### 4. Verdict and Conviction

On June 14, 1999, Petitioner was convicted by a New York County jury of criminal possession of a controlled substance in the first degree, pursuant to N.Y.P.L. § 220.21[1]. See Petition at 2. Petitioner was sentenced to a term of 15 years to life. Id.

### 5. Petitioner's Direct Appeals

Petitioner, with appellate counsel, appealed to the New York State Supreme Court, Appellate Division, First Department, on the grounds that: (1) the trial court improperly denied his suppression motion without a hearing; and (2) the trial court denied him a fair trial by improperly inhibiting potential and actual jurors from disclosing any potential biases. See id.; People v. Ramirez, 723 N.Y.S.2d 13 (N.Y. App. Div. 2001). The Appellate Division concluded that there was no basis to grant Petitioner a suppression hearing because he "expressly dispute[d] the People's allegation that he had dropped a bag of cocaine to the ground, and disclaimed that the drugs had ever been in his possession." Attias Decl., Ex. C at 20. In addition, Petitioner's claim that the trial court improperly inhibited potential jurors from disclosing any potential biases or prejudices was unpreserved. Id. The court also denied review of this claim in the interest of justice. On March 27, 2001, the court affirmed Petitioner's conviction. Id.

Petitioner then filed an application for leave to appeal to the New York Court of Appeals on July 2, 2001 on the same two grounds. Petitioner's application was denied on July 5, 2001 (People v. Ramirez, 96 N.Y.2d 906 (N.Y. App. Div. 2001)). He subsequently filed a *pro se* motion for a writ of error *coram nobis* on May 9, 2002 and claimed ineffective assistance of counsel based on counsel's failure to preserve Petitioner's claim that the trial court improperly inhibited potential and actual jurors from disclosing potential biases and prejudices. Id.

On February 5, 2003, Petitioner submitted the motion to the New York State Supreme Court to vacate his judgment on the ground that the trial court had violated his due process rights by rejecting his aborted guilty plea. Attias Decl., Ex. F. This motion was denied on March 14, 2003. See Petition 3. On June 12, 2003, the New York Appellate Division denied Petitioner's request for leave to appeal.

### C. Exhaustion of State Remedies

Petitioner has exhausted the remedies available at the state level because he has presented the same federal constitutional claim to the highest state court—*i.e.*, the New York Court of Appeals. See 28 U.S.C. § 2254(b)(1)(A) (2007); Wilkinson v. Dotson, 544 U.S. 74, 79 (2005); Grey v. Hoke, 933 F.2d 117 (2d Cir. 1991).

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) (2007), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" as submitted in a report and recommendation ("R&R"). 28 U.S.C. §636(b)(1)(C) (2007). Those parts of the R&R to which specific objections are made must be reviewed *de novo*. Id.; see Singleton v. Davis, No. 03 Civ. 1446, 2007 U.S. Dist. LEXIS 3958 at *1-2 (S.D.N.Y. Jan. 28, 2007). Such a determination must be made based on a review of the "[r]eport, applicable legal authorities, . . . [and] Plaintiff's and Defendant's objections and replies." Diaz v. Girdich, No. 04 Civ. 5061, 2007 U.S. Dist. LEXIS 4592 at *2 (S.D.N.Y. Jan. 18, 2007) (quoting Bandhan v. Lab. Corp. of Am., 234 F. Supp. 2d 313, 316 (S.D.N.Y. 2002)). However, those sections of the R&R to which general and conclusory objections are made are reviewed strictly for clear error.

Here, while Petitioner generally objects to Judge Pitman's Report, he offers only one specific objection—that the correct inquiry was the denial of a suppression hearing which precluded him from litigating "the police officers' conduct in following Petitioner and questioning [him] without reasonable suspicion." Letter from Edward D. Wilford to Hon. Harold Baer, dated January 27, 2007 ("the Letter") at 2. Because Petitioner submitted this specific objection, I review the Report's recommendation and findings as to Petitioner's Fourth Amendment claim *de novo*. See id. at 1. However, Petitioner's sweeping objections to the Report in "all respects" simply invites a review of the same issues raised in the petition. See Letter. Therefore, I review Petitioner's remaining three claims for clear error.

## III. DISCUSSION

**A.  Petitioner's Fourth Amendment Claim**

Petitioner is not entitled to habeas relief based on his Fourth Amendment claim that the trial court improperly denied his suppression motion without a hearing. He has failed to satisfy the requirements of § 2254(d) – i.e. either that the state court's judgment of his Fourth Amendment claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or that the judgment was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In addition, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim as required by Stone v. Powell, 428 U.S. 465 (1976) *vis-a-vis* New York State's

7

corrective procedures and was not denied this opportunity by an "unconscionable breakdown" of these procedures. See Singh v. Miller, 104 Fed. Appx. 770, 772 (2d Cir. 2004).

First, § 2254(d) applies in this instance because the record shows that Petitioner's Fourth Amendment claim was adjudicated on the merits in a state court proceeding. A Petitioner seeking to raise a Fourth Amendment claim has the burden of establishing standing[8] to bring such a claim. See United States v. Osorio, 949 F.2d 38, 40 (2d Cir. 1991) ("The party moving to suppress bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."). To establish standing to raise a Fourth Amendment claim, a petitioner must demonstrate that he had an expectation of privacy in the goods seized. Id. at 40 ("In evaluating these claims, the court generally considers whether the defendant had any property or possessory interest in the . . . items seized."); see United States v. Salvucci, 448 U.S. 83, 95 (1980) (where the case was remanded on the issue of standing since Petitioners "did not attempt to establish that they had a legitimate expectation of privacy in the areas of . . . [the] home where the goods were seized.").

However, where as here Petitioner disclaims any possession of the seized property, Petitioner has no privacy interest in the property, and therefore lacks standing to challenge seizure of the property. See Martin v. McClellan, No. 97 Civ. 7485, 2000 U.S. Dist. LEXIS 6652 at *9 (S.D.N.Y. May 17, 2000) ("because [Petitioner] disclaimed any possessory interest in the contraband, and indeed asserted that no drugs were seized from him, [Petitioner] had no standing to contest the seizure."). In addition, the abandonment of goods constitutes a forfeiture of any possessory and privacy interests in the seized goods. United States v. Lee, 916 F.2d 814, 818 (2d Cir. 1990) ("When a person voluntarily abandons property . . . he forfeits any reasonable expectation of privacy that he might have had in the property."); Bagley v. Warden, Attica Corr. Facility, No. 89 Civ. 5014, 1991 U.S. Dist. LEXIS 7275 (S.D.N.Y. May 22, 1991) ("One who has abandoned property is held to have forsaken any reasonable expectation of privacy in that property for Fourth Amendment purposes."). In determining whether the goods have been abandoned, a court must look to Petitioner's intent at the time of the challenged search and seizure. Lee, 916 F.2d at 818; United States v. Moskowitz, 883 F.2d 1142 (2d Cir. 1989). "Intent may be inferred from words spoken, acts done, and other objective facts." Id. (quoting United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973)).

---

[8] "[S]tanding is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975); see Baker v. Carr, 369 U.S. 186, 204 n.9 (1962) (Petitioner must "allege[] such a personal stake in the outcome of the controversy" to be entitled to relief from federal courts).

8

The record demonstrates that the Appellate Division rested its dismissal of Petitioner's Fourth Amendment claim on this federal standing requirement. In its unanimous opinion affirming Petitioner's conviction, the Appellate Division stated that, "viewing [Petitioner's] two sets of moving papers on a whole, [it] found . . . no basis upon which to grant a suppression hearing" because Petitioner "expressly disputed the People's allegation that he had dropped a bag of cocaine to the ground, and disclaimed that the drugs had ever been in his possession." People v. Ramirez, 723 N.Y.S.2d at 13.

Turning then, as I must, to § 2254(d), Petitioner has not established that the Appellate Division's decision was contrary to or resulted from an unreasonable application of federal law. Far from contradicting federal law, the Appellate Division appeared to have followed Supreme Court precedent in finding that the trial court's denial of a suppression hearing was proper because Petitioner failed to assert possession of the seized drugs. Therefore, Petitioner fails to satisfy § 2254(d)(1).

Nor does Petitioner establish that the Appellate Division's decision resulted from an unreasonable determination of the facts in light of the evidence presented at trial under § 2254(d)(2). In fact, Petitioner does not allege that the Appellate Court reached an unreasonable determination of the facts. Even if he did, Petitioner would fail to satisfy this prong of §2254(d). Assuming the trial court's factual findings are correct, as the Court must under § 2254(e) in the absence of clear and convincing evidence to the contrary, Petitioner abandoned the package of cocaine when he discarded it upon suspicion that he was being followed by the plain-clothed police officers. In throwing the package to the ground and continuing to walk away, Petitioner immediately forfeited any privacy right he had in the package. Since Petitioner failed to assert facts, let alone present clear and convincing evidence to the contrary at trial, the Appellate Division's determination that Petitioner lacked standing to challenge the legality of the seizure because he abandoned the package was reasonable. Therefore, § 2254(d) as a whole precludes this Court from granting Petitioner *habeas* relief based on his Fourth Amendment claim.

In addition to the bar presented by § 2254(d), Stone v. Powell precludes federal review of Petitioner's Fourth Amendment claim because Petitioner had a full and fair opportunity to litigate this claim. 428 U.S. 465, 495 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). There is no question that New York State provided adequate procedural

mechanisms for Petitioner to litigate his Fourth Amendment claim. Courts in this Circuit have held, "[a] Petitioner receives a full and fair opportunity to litigate his Fourth Amendment claim where the state provides a statutory mechanism for suppression of evidence tainted by an unlawful search and seizure." Ferron v. Goord, 255 F.Supp. 2d 127, 131 (W.D.N.Y. 2003) (quoting McPhail v. Warden, Attica Correctional Facility, 707 F.2d 67, 69 (2d Cir. 1983)) (internal citations and quotation marks omitted). Consequently, "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 et seq. (McKinney 1984 & Supp.1988) as being facially adequate." Capellan, 975 F.2d at 70. Not only were these statutory procedures available, but Petitioner took full advantage of them by moving pursuant to N.Y. CRIM. PROC. § 710.10, *twice*, to suppress the drugs seized.

Petitioner claims an unconscionable breakdown at the trial court level, but both the trial court and the Appellate Divisions conducted a reasoned inquiry into Petitioner's Fourth Amendment claim. Sufficient inquiry was made during trial as to Petitioner's standing as evidenced by the testimony regarding the events leading up to Petitioner's arrest. The trial judge even acknowledged such inquiry when he denied trial counsel's objection regarding the need for a suppression hearing in the middle of defense's cross-examination of one of the arresting officers, stating "I'm confident that Judge Beeler made a decision based on his careful analysis of the law . . . Nor was anything just said that would even indicate any possibility that Judge Beeler's decision was wrong." Tr. at 343. The Appellate Division based its inquiry on the record, which included the trial court's own reasoned inquiry and the full trial transcript. Thus, Petitioner's Fourth Amendment claim also received due reasoned inquiry at the appellate level and therefore, Petitioner's claim of an "unconscionable breakdown" fails.

Finally, even assuming the Appellate Division was incorrect in finding the denial of a suppression hearing proper, there is nothing to suggest that such a decision resulted from a breakdown in the procedural mechanisms applied. Therefore, Petitioner was not prevented from fully and fairly litigating his Fourth Amendment claim by an "unconscionable breakdown" in state procedures. In any event, the trial court was correct in denying Petitioner a suppression hearing given Petitioner's failure to establish standing to even raise a Fourth Amendment claim. Accordingly, *habeas* relief based on Petitioner's Fourth Amendment claim is denied.

**B.     Petitioner's Claim of Ineffective Assistance of Counsel**

Reviewing the Report by a clear-error standard, the Court finds that it is precluded from reviewing Petitioner's claim of ineffective assistance of counsel. A successful claim of ineffective

assistance of counsel must satisfy the two-part test in Strickland v. Washington which requires that the defendant prove: (1) "counsel's performance was deficient[;]" and (2) "the deficient performance prejudiced the defense . . . [–] that counsel's errors were so serious as to deprive the defendant of a fair trial."  466 U.S. 668, 686-687 (1984).  Claims of ineffective assistance of appellate counsel are evaluated under the same standards set forth in Strickland for ineffective assistance of trial counsel.  Mercer v. Herbert, 133 F. Supp.2d 219, 238 (W.D.N.Y. 2001).  With respect to the first prong, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  Id. at 689 (internal quotation marks omitted).  With respect to the second prong, "[t]he defendant must show that there is a reasonable probability that, *but for* counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 698 (emphasis added).

As Judge Pitman correctly points out, Petitioner has not met the "but for" test in Strickland.  First, the Appellate Division addressed the substance of Petitioner's juror intimidation claim (in spite of Petitioner's failure to preserve the underlying claim) and held that it lacked merit.  Further, since the Appellate Court determined that trial counsel was not ineffective for failing to preserve the claim, derivatively, appellate counsel too was not ineffective for failing to argue that trial counsel was ineffective.  Second, this claim was already adjudicated by a state court, pursuant to § 2454(d), and is not subject to federal review.   The Court, therefore, adopts the Report's finding that *habeas* relief on the claim of ineffective assistance of counsel should be denied.

**C.     Procedurally Barred Claims**

The Court adopts the Report's findings that Petitioner's remaining claims—that 1) he was denied a fair trial due to alleged misconduct by the trial judge during jury selection, and 2) the trial court improperly rejected his aborted guilty plea—are procedurally barred and therefore are not reviewable by this Court.  The Report was facially adequate in its finding that Petitioner failed to preserve his objections regarding the aforementioned two claims and thus is procedurally barred from raising these claims here.

The Court finds no clear error in the Report's conclusions that the independent and adequate state doctrine applies here.  New York's preservation doctrine, which provides "that an issue is properly preserved for appeal only if the appellant objected on that ground during the trial below," has been held as an adequate bar to federal *habeas* review.  Reid v. New York, No. 06 Civ. 1178, 2007 U.S. Dist. LEXIS 15750 at *18 (S.D.N.Y. Feb. 20, 2007).  Petitioner failed to preserve his

objections regarding the trial court's alleged misconduct and its rejection of his guilty plea. In addition, the Appellate Division dismissed Petitioner's "contention that the trial court inhibited the disclosure by potential jurors of potential biases and prejudices" specifically because this claim was "unpreserved." People v. Ramirez, 723 N.Y.S.2d 13, 14. Further, Petitioner has not alleged or presented any evidence that would enable him to claim exception to the independent and adequate state court doctrine. Thus, this Court denies Petitioner *habeas* relief based on his claims that the trial judge inhibited actual and potential jurors from revealing any biases and that the trial court's rejection of his aborted guilty plea was improper.

## IV. CONCLUSION

For the foregoing reasons, the recommendation of Magistrate Judge Henry B. Pitman is adopted in all respects and the petition for writ of *habeas corpus* is denied. Further, Petitioner's request for a certificate of appealability is denied because Petitioner has made no showing of a denial of a federal right, and thus, appellate review is inappropriate.

The Clerk of the Court is instructed to close this case and remove it from my docket.

**SO ORDERED.**
**October 10, 2007**
**New York, New York**

_____
U.S.D.J.

12